## HILL v. PITTSFIELD.

Under c. 196 of the Gen. Stats., a town voting to establish a police court may at the same time provide that the justice, in lieu of an annual salary of one hundred dollars, shall be entitled to the fees accruing to the office.

A police justice appointed in pursuance of such a vote cannot recover from the town the difference between the fees received by him and an annual salary of one hundred dollars for the period during which he acted under the appointment.

ASSUMPSIT, to recover a balance which the plaintiff claimed to be due him on his salary as police justice of Pittsfield from August 1, 1876, to March 1, 1885, being the difference between the fees received by him in that office and an annual salary of one hundred dollars; and interest.

*Bingham & Mitchell* (with whom was *E. A. Lane*), for the plaintiff.   The action of the town must be deduced from the article in the warrant and the vote under it.   The article was, "To see if the town will establish a police court, and provide a suitable compensation for the justice of such police court therein."   What authority had the town to act upon the subject stated in the article, and what subject was therein stated?   The only authority possessed by the town was given by *c.* 196, *s.* 1, of the Gen. Stats. : "Any town may by vote provide a suitable compensation, not less than one hundred dollars per annum, for the justice of a police court therein."   Under this law the town was authorized to vote a compensation, not necessarily a salary; it might be the fees of the office, provided they equalled or exceeded one hundred dollars a year.

The only subject stated in the article on which the town could act was to determine whether or not the town would vote "a suitable compensation, not less than one hundred dollars per annum."   The town could either vote this compensation of one hundred dollars or more, or refuse to vote it.   They were obliged to accept one or the other alternative; it must be either an affirmative or a negative vote.   If it was an affirmative vote, it would warrant the establishment of the court by the appointment of a justice; but if it was a negative vote, such a result could not legally follow.   A vote that would warrant the establishment of the court entitled the justice to a compensation of one hundred dollars or more per annum, and a vote that would not entitle the justice to compensation of at least one hundred dollars would not warrant the establishment of a police court: either both results must be justified by the vote, or neither can be.   And the court cannot hold, by any logical course of reasoning, that this article warranted a vote which would authorize the establishment of a court, and yet not entitle the justice to at least one hundred dollars.   A fair construction of the vote, in conjunction with the article, by an application of the statute, will not warrant such a conclusion.   The vote was, "That a police court be established in the town of Pittsfield; that the justice of said court, in lieu of an annual salary of one hundred dollars, shall be entitled to the fees accruing to said office."   This is plainly an affirmative vote; it votes the minimum compensation stipulated in the statute, one hundred dollars. It means simply this: The town guaranteed that the compensation should be at least one hundred dollars, and if the fees equalled or exceeded that sum, that exonerated the town; but to the extent the fees fell short of one hundred dollars a year, the town was obliged to pay the justice.   That the town intended to do that which was essential to warrant the establishment of the court is unmistakable.   In the language of the court in *State* v. *Varrell,* 58 N. H. 149, "In this case there is a   *   *   *   presumption that the town intended to comply with the statute which author-

ized the town to vote on this subject: and the vote is to be construed accordingly. The statutory minimum of compensation is to be implied."

What was the intention of the legislature in the enactment of the statute on which the right to establish a police court is based? Did they intend to permit a town to vote a compensation of less than one hundred dollars per annum, and make such a vote the authority for establishing a police court?

The intention of the legislature must be gathered from its acts.

(1) The first act is chapter 1282 of the laws of 1852. This act provided, among other things,—

(*a*) That in each town which would adopt the act there should be a police court consisting of a justice and special justice, who should be "learned and discreet," with the jurisdiction of a justice of the peace.

(*b*) The costs and fines were to be paid to the town.

(*c*) The court should meet once a month in a place provided by the town.

(*d*) The town should pay a sum not less than one hundred dollars, to be fixed from time to time.

(*e*) The act should be in force in such towns as adopted it by majority vote.

In this act there was no provision for abolishing the court by the town. The court being once established, it could only be abolished by the legislature.

(2) In 1854, by chapter 1234, this act was amended. The law, as amended, authorized the town to rescind the vote by which the act of 1852 was adopted. The effect of rescinding the vote was to absolutely abolish the court.

(3) In the revision of 1867, *s.* 1, *c.* 196, Gen. Stats., was newly enacted, and *s.* 14 of the same chapter, with material alterations, was substituted for *c.* 1534 of the Laws of 1854. (See Commissioners' Rep., 1867.)

Under the law of 1867 the town was authorized to vote a compensation of not less than one hundred dollars, and instead of abolishing the court by a vote of rescission, the effect of the rescinding vote was to leave the court, but relieve the town from its obligation to pay or guarantee one hundred dollars a year. It was as essential to have two independent votes, at different meetings, under different articles, to establish the court, and abolish the obligation to pay one hundred dollars under the law of 1867, as it was to have two independent votes to adopt the law of 1852, and abolish the court under the law of 1854. If one vote of the town under one article, at the same meeting, could not adopt the law of 1852 and abolish the court under the law of 1854, it is plain that one vote cannot "provide a suitable compensation, not less than one hundred dollars per annum, for the justice of a police court," under

*s.* 1, *c.* 196, Gen. Stats., and "rescind their vote establishing an annual salary for a police justice," under *s.* 14 of the same chapter. To pass a vote and rescind the same on a single motion, under one article, is an anomaly, an impossibility, if not an absurdity, in town-meeting, or in parliamentary law. The legislature unmistakably contemplated that the town should first vote a compensation of not less than one hundred dollars, and upon that establish the court; then, under a proper article in the warrant of a subsequent meeting, they might "rescind their vote establishing an annual salary." They are authorized to do but one thing at a time. They must first do an act before they can undo it. It is as essential and imperative as that marriage should precede divorce, or that birth should precede death, or that a contract should be made before it is rescinded.

If the defendants' contention is right, viz., that the defendants did not vote a compensation of one hundred dollars a year, then the town voted no compensation, because the fees belonged to the town only in the event that they voted to pay the statutory compensation.

*Chase & Streeter*, for the defendants. The language of the vote of the town of Pittsfield, "that the justice of said court, in lieu of an annual salary of one hundred dollars, shall be entitled to the fees accruing to said office," is unambiguous, and clearly conveys the idea that the fees accruing to said office were to take the place of the annual salary. It is not capable of the construction that the fees were to be credited as part payment of salary, and that the town was to pay the balance, without entirely perverting the meaning of the phrase "in lieu of" from its well established and universal signification. In *State* v. *Varrell*, 58 N. H., 148, it is said that "the presumption that the legislature, in the enactment of laws, intend to act in conformity with the constitution, tends to support such a construction of statutes as gives them a constitutional operation;" and that in such cases as this "there is a similar presumption that the town intended to comply with the statute which authorized the town to vote on the subject, and the vote is to be construed accordingly." But to justify the application of this principle, the instrument to be construed must be ambiguous in its language and capable of two constructions. Best Prin. Ev. 346; *Wood* v. *Adams*, 35 N. H. 32, 36; 2 Par. Cont. (7th ed.) 631. Where the legislature or the town, by using expressive and unambiguous language, has left no ground for appeal to such presumption in aid of construction, the language must have its natural significance and force, and stand as the expression of the ideas and intention of the legislature or town on the subject. The law never overcomes by its implications the express provisions of parties;—if they are illegal, it avoids them; if legal, it yields to them. 2 Par. Cont. 646.

BINGHAM, J.   This case calls for the construction of Gen. Sts., *c.* 196, *ss.* 1, 14, authorizing police courts in towns.  In construing statutes, the court should ascertain the intention of the law-making power, and give it effect in every legitimate way.   This requires not only an examination of sections 1 and 14, but of antecedent statutes on the same subject-matter.

Police courts in towns were first established in 1852.   Laws of 1852, *c.* 1282, *s.* 1, provided that there should be, in each town in this state in which the act may be in force, a police court, consisting of one person commissioned by the governor, pursuant to the constitution.   Section 7 provided that " said justice shall account for and pay over to such town all the fees by him received, or which now accrue to justices of the peace in civil actions and criminal prosecutions, and such towns shall pay annually to said justice of said court the sum of not less than one hundred dollars, to be fixed from time to time by such town, at a meeting thereof duly called for that purpose, in full compensation for all services assigned to him by the provisions of this act."   Section 12 provided that the act should be in force in any town which, at a legal meeting, should adopt the same, and that the town-clerk should file in the office of the secretary of state a copy of the vote within thirty days after its adoption, which should be the evidence on which the appointment of a police justice should be made.   The town, under this act, by adopting it, authorized the appointment of a police justice by the governor, and obligated themselves to pay him a salary of not less than one hundred dollars, and he was to account for all fees to the town.

Laws of 1854, *c.* 1534, authorized any town, that had or should thereafter adopt *c.* 1282, Laws of 1852, to rescind the vote adopting it, when it should cease to be in force, and the town should cease to be liable for the salary.   This act gave no authority to towns to refuse to pay the salary unless they abolished the court. These statutory provisions continued till the revision of 1867, when it was enacted in Gen. Sts., *c.* 196, *s.* 1, that any town may by vote provide suitable compensation, not less than one hundred dollars per annum, for the justice of a police court therein ; and upon a certificate made by the town-clerk to the governor of such vote, and the article in the warrant for the town-meeting under which it was passed authorizing the same, a justice may be appointed, and the court thereby established.   This section contains the substance of *ss.* 1, 7, and 12, *c.* 1282, Laws of 1852; that is, it provides for the establishment of a police court and the liability of the town for the salary in one vote.   It contains no new legislation, but consolidates the legislation of 1852 regardless of *c.* 1534 of 1854.

General Statutes, *c.* 196, *s.* 14, provide that "any town may rescind their vote establishing an annual salary for a police justice, and shall be no longer liable therefor; in which case the justice

and special justice of said court may receive and hold all fees accruing to them to their own use." This section is, in part, the act of 1854, with the authority of a town to rescind the vote adopting the law of 1852, changed to an authority to rescind the vote to pay a salary of not less than one hundred dollars, and in part, new legislation, making the fees that accrue to the office the salary. The inquiry now is, What was the effect of reënacting *ss.* 1 and 14 in this modified form, in the same chapter, in the revision of 1867? Prior to this, towns having police courts were obliged to pay a salary of not less than one hundred dollars and take the fees of the office, and had no relief, except by abolishing the court, under the act of 1854. In condensing and consolidating the provisions of the local option law and making it general, the substance of *ss.* 1, 7, and 12 was brought together in *s.* 1 of the revision without an essential change of meaning. This restored the law as it was before the act of 1854; and if *s.* 14 had been omitted, towns would have had no power to abolish the court or the salary. It appears that *s.* 14 changed the effect of *s.* 1, so that the salary of not less than one hundred dollars could be abolished by the town and make the fees accruing to the office the salary, and have the court continue with the same jurisdiction and powers as before. This in legal effect left it optional as to all existing courts for the town to say whether the court should receive the pay of a fixed salary of not less than one hundred dollars and the town take the fees, or allow the justices to take the fees accruing by law to the office. Is it not plain that the legislature intended *s.* 14 to modify and change *s.* 1 to this extent? And if it is, was it the intention of the legislature, in the enactment of *s.* 14, to make it optional with towns whether they paid a salary of not less than one hundred dollars, or the fees that accrued to the office, and at the same time require towns in the establishment of every new court to perform the idle ceremony of voting a salary as a prerequisite to the establishment of a court, which requirement the town could at once call a meeting and dispense with, and the court would continue to exist with the same powers as before? It would seem that such a construction is so void of practical sense that no court can well say that the legislature intended to establish such a rule for the creation of police courts. Then, considering *ss.* 1 and 14 together, what is their meaning, and what was the purpose of the legislature in enacting them? Is it not the combined meaning of both sections that towns have the authority to say whether they will pay the police justices by salary, or by the fees of the office, and that the establishment and continued existence of the court do not depend upon the vote of the town to pay in the one way rather than in the other; that it may vote to establish a court and pay it a salary of not less than one hundred dollars, or it may vote to establish a court, saying nothing about a salary, in which case it would be the fees accruing to the justices, or, which

would be the same thing, a vote to establish a court, giving it the fees of the office in lieu of the salary?

The town of Pittsfield having voted to establish a police court, and to give it the fees accruing to the office in lieu of an annual salary of one hundred dollars, and the justice having been duly appointed by the governor, the police court in that town is a *de jure* court under *c.* 196, Gen. Sts., and the justice is entitled to the fees voted by the town, and no other salary. The result in *State* v. *Varrell,* 58 N. H. 148, was right, but the decision should have been placed upon a different ground.

*Judgment for the defendants.*

CARPENTER, J., did not sit: the others concurred.